**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ALDERIAN TECHNOLOGIES LLC, | ) ) ) | Case No. 2:26-cv-00 |
| Plaintiff, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) ) | |
| ACER, INC., | ) ) ) | |
| Defendant. | ) ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Alderian Technologies LLC ("Alderian" or "Plaintiff") for its Complaint against

Defendant Acer, Inc. ("Acer" or "Defendant") for patent infringement alleges as follows:

**THE PARTIES**

1.    Alderian is a limited liability company, organized and existing under the laws of

the State of Texas, with its principal place of business located at 104 East Houston Street, Marshall,

Texas 75670.

2.    Upon information and belief, Acer is a corporation organized and existing under

the laws of Taiwan, with its principal place of business located at 1F, 88, Sec. 1, Xintai 5th Road,

Xizhi, New Taipei City 221, Taiwan. Acer is a leading manufacturer and seller of computers

throughout the world and in the United States. Upon information and belief, Acer does business in

Texas and in the Eastern District of Texas, directly or through intermediaries.

**JURISDICTION AND VENUE**

3.    This is an action for patent infringement arising under the patent laws of the United

States, 35 U.S.C. §§ 1, *et seq*.  This Court has jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Acer. Acer conducts business and has committed acts of patent infringement and/or has induced acts of patent infringement by others in this judicial District, the State of Texas, and elsewhere in the United States. Acer has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities. Acer regularly sells (either directly or indirectly) its products within this judicial District. For example, Acer has placed and continues to place infringing products into the stream of commerce via an established distribution channel, such as its partner distributors, with the knowledge or understanding that such products are being and will continue to be sold in this judicial District and within the State of Texas. Acer is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and the Texas Long Arm Statute, due at least to its substantial and pervasive business in this State and this judicial District, including at least part of its infringing activities alleged herein and deriving substantial revenue from goods sold to Texas residents.

5. Acer is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and the Texas Long Arm Statute based on its substantial business activities in the State of Texas and in this judicial District.

6. Acer's infringing activities constitute a portion of Acer's substantial business activities in the State of Texas and in this judicial District. As alleged herein, Defendant purposefully avails itself of the privilege of conducting its business activities in the State of Texas and in this judicial District, and, thus, submits itself to the jurisdiction of this Court.

7. Acer also regularly does and solicits business, engaging in other persistent conduct targeting residents of Texas and residents of this judicial District, and/or derives substantial revenue from infringing goods offered for sale, sold, and imported to and targeting Texas residents

and residents of this judicial District vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers. *See, e.g.,* https://store.acer.com/en-us/?internal_source=store.acer.com&internal_medium=referral&internal_campaign=GlobalSelectorPage&internal_content=US (advertising products for sale and identifying third-party retailers of Defendant's products). Such a presence furthers the development, design, manufacture, importation, distribution, sale, and use (including by induced infringement) of infringing Accused Products (defined below in ¶ 20) in Texas, including this judicial District.

8.     This Court has personal jurisdiction over Acer, directly and/or through the activities of Acer intermediaries, agents, related entities, distributors, importers, customers, subsidiaries, and/or consumers. Through direction and control of these various entities, Acer has committed acts of direct and/or indirect patent infringement within the State of Texas, within this judicial District, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with the State of Texas such that personal jurisdiction over Acer would not offend traditional notions of fair play and substantial justice.

9.     Acer, directly via its agents and distribution partners, retailers, reseller partners, and other service providers in the United States, has placed and continues to place infringing Accused Products into the U.S. stream of commerce. Acer has placed such products into the stream of commerce with the knowledge and understanding that such products are, will be, and continue to be sold, offered for sale, and/or imported into this judicial District and the State of Texas.

10.     Acer utilizes established distribution channels to distribute, market, offer for sale, sell, and service infringing products directly to consumers and other users in the United States, including providing links via its website to online stores, retailers, resellers, and distributors

3

offering such products and related services for sale. *See, e.g.*, https://store.acer.com/en-us/?internal_source=store.acer.com&internal_medium=referral&internal_campaign=GlobalSelectorPage&internal_content=US (advertising products for sale and identifying third-party retailers of Defendant's Accused Products). Such Acer products have been sold in both retail stores (online and brick and mortar) within this judicial District and within the State of Texas. For example, the Accused Product Acer Predator Helios Neo 16S AI Gaming Laptop is available for pickup at the Best Buy location at 422 W Loop 281 STE 100, Longview, TX 75605.



11.     Based on Acer's connections and relationships with these retailers and digital distribution platforms, Acer knows that Texas is a termination point of its established distribution channels, including the online as well as physical stores offering Acer products to users in Texas. Acer, therefore, has purposefully directed its activities at the State of Texas, and should reasonably anticipate being brought before this Court.

12.     Acer's suppliers and distributors import, advertise, offer for sale, and sell Acer Accused Products via their own websites to U.S. consumers, including to consumers in the State of Texas.  Based on Acer's connections and relationships, including supply contracts and other

---

[1] *See* BEST BUY WEBSITE, available at: https://www.bestbuy.com/product/acer-predator-helios-neo-16s-ai-gaming-laptop-16-oled-240hz-intel-core-ultra-9-nvidia-geforce-rtx-5070ti-32gb-1tb-obsidian-black/JJ8V8H38XT/sku/6619312 (last accessed April 6, 2026).

agreements with the United States- and Texas-based distributors and suppliers, such as at least Best Buy, Walmart, and Amazon, Acer knows and has known that the State of Texas is a termination point of the established distribution channels for infringing Acer Accused Products. Acer has purposefully directed its activities at the State of Texas, and should reasonably anticipate being brought into this Court, at least on this basis. Acer has also personally availed itself of this Court by filing patent infringement actions in various cases, including *Acer, Inc. v. AT&T, Inc, et al.*, Case No. 2:26-cv-00025 (E.D.T.X.); *Acer, Inc. v. T-Mobile USA Inc., et al.*, Case No. 2:26-cv-00026 (E.D.T.X.); *Acer, Inc. v. Cellco Partnership d/b/a Verizon Wireless, et al.*, Case No. 2:26-cv-00027 (E.D.T.X.); *Acer, Incorporated v. PACCAR Inc.*, Case No. 2:25-cv-00740 (E.D.T.X.).

13.     In the alternative, this Court has personal jurisdiction over Acer under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal patent law, Acer is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Acer is consistent with the United States Constitution.

14.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because, among other things, Acer is not a resident in the United States and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

### PATENT-IN-SUIT

15.     On May 5, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,645,387 (the "'387 Patent") entitled "Predictive Quantization Coding Method and Video Compression System." A true and correct copy of the '387 Patent is available at: https://patentimages.storage.googleapis.com/0a/76/4b/4790b52e40849e/US10645387.pdf.

16.     On June 16, 2015, the United States Patent and Trademark Office duly and legally

issued U.S. Patent No. 9,060,172 (the "'172 Patent") entitled "Methods and Systems for Mixed Spatial Resolution Video Compression." A true and correct copy of the '172 Patent is available at: https://patentimages.storage.googleapis.com/36/db/91/8b9678905bdceb/US9060172.pdf.

17.     Alderian is the sole and exclusive owner of all right, title, and interest in the'387 Patent and the '172 Patent (collectively, the "Patents-in-Suit" or "Asserted Patents") and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. Alderian also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

18.     Alderian has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit. On information and belief, prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287. Alternatively, on information and belief, no patented articles have ever been produced requiring marking.

**FACTUAL ALLEGATIONS**

19.     The '387 Patent generally relates to systems and methods for predictive quantization coding and video compression. The technology described in the '387 Patent was developed by Quingdong Yue, Wenfang Ran, and Wen Li. For example, the technology of the '387 Patent is implemented today by products that contain SoCs, chipsets, software, and/or GPUs, which utilize hardware and software encoders that perform predictive quantization coding and block-based depth map coding, including, but not limited to, Acer laptops and desktops with video encoders, including, but not limited to, Aspire computers, Aspire Vero computers, ConceptD computers, Nitro computers, Predator Helios computers, Predator Triton computers, Spin, Swift computers, Swift Edge computers, Swift Go computers, Swift X computers, TravelMate

computers, Chromebook computers, Chromebook Plus computers, Chromebook Spin computers, Chromebook Vero computers, Predator Orion computers, Revo Box computers, Veriton computers, Chromebox computers, among other Acer products (collectively, the "Accused Products").

20.    The '172 Patent generally relates to systems and methods for encoding a frame of visual data. The technology of the '172 Patent was developed by Walter Paul, Arkady Kopansky, and Hui Cheng. For example, the technology of the '172 Patent is implemented today by products that contain SoCs, chipsets, software, and/or GPUs, which utilize hardware and software encoders and decoders that perform mixed spatial resolution video compression, including, but not limited to, Acer laptops and desktops, including, but not limited to, the Accused Products, among other Acer products.

21.    Acer has infringed and is continuing to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or importing, products including, but not limited, infringing computers.

## COUNT I
### (Infringement of the '387 Patent)

22.    Paragraphs 1 through 21 are incorporated by reference as if fully set forth herein.

23.    Alderian has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '387 Patent.

24.    Defendant has and continues to directly infringe the '387 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '387 Patent. Such infringing products include Acer laptops and desktops that contain SoCs, chipsets, software, and/or GPUs, which utilize

hardware and software encoders that perform predictive quantization coding, including, but not limited to, the Acer Chromebook Plus Spin 514 equipped with the MediaTek Kompanio Ultra 910 SoC, as well as other hardware and software encoders, among other Acer products.

25.     For example, Defendant has and continues to directly infringe at least claim 1 of the '387 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include the Acer Chromebook Plus Spin 514, among other Acer products. The Acer Chromebook Plus Spin 514 is exemplary and representative of how the Accused Products infringe the '387 Patent.

26.     For example, the Acer Chromebook Plus Spin 514 performs a quantization coding method, comprising the steps of: (a) dividing a pixel to be processed into a plurality of pixel components, wherein pixels of an image are sequentially taken as the pixel to be processed; (b) obtaining one pixel component to be processed from the plurality of pixel components; (c) obtaining texture direction gradients of the pixel component to be processed; (d) obtaining reference pixels according to the texture direction gradients and positional relationships between the pixel component to be processed and A remaining of the plurality of pixel components; (e) obtaining a prediction residual of the pixel component to be processed according to the reference pixels; (f) repeating steps (b) to (e), and taking each pixel component of the plurality of pixel components and obtaining the prediction residual corresponding thereto, and forming a prediction residual code stream including the prediction residuals of the pixel to be processed of the image; (g) dividing the prediction residual code stream into a plurality of quantization units each including a predetermined number of prediction residuals divided from the prediction residual code stream; and (h) obtaining first rate distortion optimizations and second rate distortion optimizations corresponding to the plurality of quantization units to obtain a quantization residual code stream

(e.g., HEVC and/or other codecs use an inter-/intra-picture prediction with an algorithm that process blocks of data in a region according to neighboring regions/pixels to predict the value of the current pixel).

27.    On information and belief, at least MediaTek's codec components and related software codecs come preinstalled on devices with MediaTek SoCs.

28.    For example, the Accused Products include MediaTek codecs for video encoding and compression.





29.    For example, such as in operation with HEVC and other codecs, MediaTek SoCs

---

[2] https://chromium.googlesource.com/chromiumos/third_party/kernel/+/chromeos-3.18/drivers/media/platform/mtk-vcodec (last accessed on or about May 20, 2026).

[3] *See, e.g.*, https://www.mediatek.com/products/chromebooks/mediatek-kompanio-ultra.

can code units in an intra prediction mode.

> **8.4.4.2    Intra sample prediction**
>
> **8.4.4.2.1    General intra sample prediction**
>
> Inputs to this process are:
>
> – a sample location ( xTbCmp, yTbCmp ) specifying the top-left sample of the current transform block relative to the top-left sample of the current picture,
>
> – a variable predModeIntra specifying the intra prediction mode,
>
> – a variable nTbS specifying the transform block size,
>
> – a variable cIdx specifying the colour component of the current block.
>
> Outputs of this process are the predicted samples predSamples[ x ][ y ], with x, y = 0..nTbS − 1. [4]

30.    By way of further example, H.265 V11 can recognize supplemental encoder-optimization information that can include quantization-related information.

> **D.4.5    Use of the encoder optimization information SEI messages**
>
> For purposes of interpretation of the encoder optimization information SEI message, the following variables are derived separately for each picture to which the encoder optimization information SEI message applies as follows:
>
> – CroppedWidth is set equal to pic_width_in_luma_samples − SubWidthC * ( conf_win_left_offset + conf_win_right_offset ).
>
> – CroppedHeight is set equal to pic_height_in_luma_samples − SubHeightC * ( conf_win_top_offset + conf_win_bottom_offset ).
>
> – PicQuant is set equal to 26 + init_qp_minus26 + slice_qp_delta of the first slice segment of the picture.
>
> When eoi_pic_quant_object_flag is equal to 1 and eoi_quant_threshold_delta is greater than 0, ( PicQuant + eoi_quant_threshold_delta ) shall be less than or equal to 51. When eoi_pic_quant_object_flag is equal to 0 and eoi_quant_threshold_delta is greater than 0, ( PicQuant − eoi_quant_threshold_delta ) shall be greater than or equal to −QpBdOffset. [5]

31.    On information and belief, Defendant's direct infringement of the '387 Patent includes, but is not limited to, testing, development, troubleshooting, and other use in the United States. Defendant also uses the Accused Products at tradeshows in the United States to promote

---

[4] *See* Int'l Telecomm. Union, Recommendation ITU-T H.265, *High Efficiency Video Coding* § 8.4, at 135 (Version 8, Aug. 2021), available at: https://e2e.ti.com/cfs-file/__key/communityserver-discussions-components-files/791/T_2D00_REC_2D00_H.265_2D00_202108_2D00_S_21002100_PDF_2D00_E.pdf; *see also Id.* at 126-142.

[5] *See* Int'l Telecomm. Union, Recommendation ITU-T H.265, *High Efficiency Video Coding*, at 424 (Version 11, Jan. 2026), available at: https://www.itu.int/rec/T-REC-H.265-202601-I.

the sale of the Accused Products.

32.     Defendant has and continues to indirectly infringe one or more claims of the '387 Patent by knowingly and intentionally inducing others, including Acer customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

33.     Defendant, with knowledge that these products, or the use thereof, infringe the '387 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '387 Patent by providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, and instructing its officers, agents, and employees to not review the patents of others, including specifically those related to Defendant's specific industry, with the subject belief that there was a high probability that Defendant would learn of their infringing activities, thereby remaining willfully blind to the '387 Patent at least as early as the issuance of the '387 Patent.

34.     Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '387 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce infringement by its customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's website, product literature and packaging, and other publications. For example, Acer makes available to its customers and end-users various materials that instruct them on how to use Acer products in an infringing manner based on the product, such as user manuals

11



35.      On information and belief, these instructional materials are prepared by Defendant or at the direction of Defendant. Because of Defendant's inducement, Defendant's customers and end-users use the accused products in a way Defendant intends and directly infringe the '387 Patent. Defendant performs these affirmative acts with knowledge of the '387 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '387 Patent.

36.      Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '387 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the accused products in this District and elsewhere in the United States and causing the accused products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the accused products such that the '387 Patent is directly infringed by others. The accused components within the accused

---

[6] https://www.acer.com/us-en/support/drivers-and-manuals.

12

products are material to the invention of the '387 Patent, including at least video encoders, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '387 Patent. Defendant performs these affirmative acts with knowledge of the '387 Patent and with intent, or willful blindness, that they cause the direct infringement of the '387 Patent.

37.     Alderian has suffered damages as a result of Defendant's direct and indirect infringement of the '387 Patent in an amount to be proven at trial.

38.     Alderian has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '387 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT II
### (Infringement of the '172 Patent)

39.     Paragraphs 1 through 21 are incorporated by reference as if fully set forth herein.

40.     Alderian has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '172 Patent.

41.     Defendant has and continues to directly infringe the '172 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '172 Patent. Such infringing products include Acer laptops and desktops that contain SoCs, chipsets, software, and/or GPUs, which utilize hardware and software encoders and decoders that perform mixed spatial resolution video compression, including, but not limited to, the Acer Chromebook Plus Spin 514 equipped with the MediaTek Kompanio Ultra 910, as well as other hardware and software encoders and decoders, among other Acer products.

13

42. For example, Defendant has and continues to directly infringe at least claim 1 of the '172 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include the Acer Chromebook Plus Spin 514, among other Acer products. The Acer Chromebook Plus Spin 514 is exemplary and representative of how the accused infringing products infringe the '172 Patent.

43. For example, the Acer Chromebook Plus Spin 514 performs a computer implemented method of video compression, the method comprising the steps of: generating a reconstructed full resolution frame and coded data corresponding to the reconstructed full resolution frame from an original full resolution frame; generating an upsampled reconstructed reduced spatial resolution frame and coded data corresponding to the upsampled reconstructed reduced spatial resolution frame from the original full resolution frame; determining a first deviation by comparing at least one characteristic in the reconstructed full resolution frame with said at least one characteristic in the original full resolution frame; determining a second deviation by comparing said at least one characteristic in the upsampled reconstructed reduced spatial reduced resolution frame with said at least one characteristic in the original full resolution frame; and outputting the coded data corresponding to the reconstructed full resolution frame when the first deviation is less than the second deviation; otherwise outputting the coded data corresponding to the upsampled reconstructed reduced spatial reduced resolution frame.

44. On information and belief, at least MediaTek's codec components and related software codecs come preinstalled on devices with MediaTek SoCs.

45. For example, the Accused Products include MediaTek codecs for video encoding and compression.

14





46.     For example, such as in operation with HEVC and other codecs, MediaTek SoCs can code units in an intra prediction mode.[9] By way of further example, H.265 V11 can recognize supplemental encoder-optimization information that can include quantization-related information.

---

[7] https://chromium.googlesource.com/chromiumos/third_party/kernel/+/chromeos-3.18/drivers/media/platform/mtk-vcodec (last accessed on or about May 20, 2026).

[8] *See, e.g.*, https://www.mediatek.com/products/chromebooks/mediatek-kompanio-ultra.

[9] *See, e.g.,* Int'l Telecomm. Union, Recommendation ITU-T H.265, *High Efficiency Video Coding*, at 126-142. (Version 8, Aug. 2021), available at: https://e2e.ti.com/cfs-file/__key/communityserver-discussions-components-files/791/T_2D00_REC_2D00_H.265_2D00_202108_2D00_S_21002100_PDF_2D00_E.pdf.

> **D.4.5    Use of the encoder optimization information SEI messages**
>
> For purposes of interpretation of the encoder optimization information SEI message, the following variables are derived separately for each picture to which the encoder optimization information SEI message applies as follows:
>
> – CroppedWidth is set equal to $pic\_width\_in\_luma\_samples - SubWidthC * ( conf\_win\_left\_offset + conf\_win\_right\_offset )$.
>
> – CroppedHeight is set equal to $pic\_height\_in\_luma\_samples - SubHeightC * ( conf\_win\_top\_offset + conf\_win\_bottom\_offset )$.
>
> – PicQuant is set equal to $26 + init\_qp\_minus26 + slice\_qp\_delta$ of the first slice segment of the picture.
>
> When $eoi\_pic\_quant\_object\_flag$ is equal to 1 and $eoi\_quant\_threshold\_delta$ is greater than 0, $( PicQuant + eoi\_quant\_threshold\_delta )$ shall be less than or equal to 51. When $eoi\_pic\_quant\_object\_flag$ is equal to 0 and $eoi\_quant\_threshold\_delta$ is greater than 0, $( PicQuant - eoi\_quant\_threshold\_delta )$ shall be greater than or equal to $-QpBdOffset$. [10]

47.    On information and belief, Defendant's direct infringement of the '172 Patent includes, but is not limited to, testing, development, troubleshooting, and other use in the United States. Defendant also uses the Accused Products at tradeshows in the United States to promote the sale of the Accused Products.

48.    Defendant has and continues to indirectly infringe one or more claims of the '172 Patent by knowingly and intentionally inducing others, including Acer customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

49.    Defendant, with knowledge that these products, or the use thereof, infringe the '172 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '172 Patent by providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, and instructing its officers, agents, and employees to not review the patents of others, including specifically those related to Defendant's specific industry, with the subject belief that there was a high probability that

---

[10] *See* Int'l Telecomm. Union, Recommendation ITU-T H.265, *High Efficiency Video Coding* (Version 11, Jan. 2026), at 424 (Version 11, Jan. 2026), available at: https://www.itu.int/rec/T-REC-H.265-202601-I.

Defendant would learn of their infringing activities, thereby remaining willfully blind to the '172 Patent at least as early as the issuance of the '172 Patent.

50.    Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '172 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce infringement by its customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's website, product literature and packaging, and other publications. For example, Acer makes available to its customers and end-users various materials that instruct them on how to use Acer products in an infringing manner based on the product, such as user manuals


[11]

---

[11] https://www.acer.com/us-en/support/drivers-and-manuals.

51.     On information and belief, these instructional materials are prepared by Defendant or at the direction of Defendant. Because of Defendant's inducement, Defendant's customers and end-users use the accused products in a way Defendant intends and directly infringe the '172 Patent. Defendant performs these affirmative acts with knowledge of the '172 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '172 Patent.

52.     Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '172 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the accused products in this District and elsewhere in the United States and causing the accused products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the accused products such that the '172 Patent is directly infringed by others. The accused components within the accused products are material to the invention of the '172 Patent, including at least video encoders and decoders, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '172 Patent. Defendant performs these affirmative acts with knowledge of the '172 Patent and with intent, or willful blindness, that they cause the direct infringement of the '172 Patent.

53.     Alderian has suffered damages as a result of Defendant's direct and indirect infringement of the '172 Patent in an amount to be proven at trial.

54.     Alderian has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '172 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

**<u>DEMAND FOR JURY TRIAL</u>**

18

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Alderian prays for relief against Defendant as follows:

a.      Entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b.      An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of one or more of the Patents-in-Suit;

c.      An order awarding damages sufficient to compensate Plaintiff for Defendant's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

d.      Entry of judgment declaring that this case is exceptional and awarding Plaintiff its costs and reasonable attorney fees under 35 U.S.C. § 285; and

e.      Such other and further relief as the Court deems just and proper.

Dated: May 26, 2026                          Respectfully submitted,

                                             /s/ John Andrew Rubino
                                             John Andrew Rubino
                                             NY Bar No. 5020797
                                             Email: jarubino@rubinoip.com
                                             Michael Mondelli III
                                             NY Bar No. 5805114
                                             Email: mmondelli@rubinoip.com
                                             **RUBINO IP**
                                             1200 Harbor Blvd., 10th Floor
                                             Weehawken Township, NJ 07086
                                             Telephone: (201) 341-9445
                                             Facsimile: (973) 535-0921

                                             ***ATTORNEYS FOR PLAINTIFF,***
                                             ***ALDERIAN TECHNOLOGIES LLC***

19